IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED IN OPEN COURT

SEP - 9 2009

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIM. NO. 1:09CR 406 |
| | ) | |
| ADIL R. CASSIM, A.K.A. "Kali," | ) | Count 1: 18 U.S.C. § 371 |
| MATTHEW D. CHOW, A.K.A. "RL," | ) | (Conspiracy) |
| BENNIE L. GLOVER, A.K.A. "ADEG," | ) | |
| EDWARD L. MOHAN, II, A.K.A. "MistaEd," | ) | |
| | ) | |
| Defendants. | ) | |

## INDICTMENT

September 2009 Term at Alexandria, Virginia

### Count One

### (Conspiracy)

THE GRAND JURY CHARGES THAT:

I. Introduction

1. During its existence from at least 1999 until 2007, "Rabid Neurosis" ("RNS") was an Internet music piracy group.

2. RNS was responsible for initially unlawfully reproducing and distributing thousands of copyrighted songs over the Internet (that were often subsequently reproduced and distributed hundreds of thousands of times). These reproductions were done for the benefit of the members of RNS and other affiliated piracy groups, in that, by getting a reputation for providing pirated materials that were previously unavailable on the piracy scene, RNS members were granted access to massive libraries of pirated music, video games, software, and movies.

3. In addition to being a piracy group, RNS was a "pre-release group;" that is, the group was often the original source or "first-provider" of pirated music that was distributed on the Internet. Members of RNS sought to acquire digital copies of songs and albums before their commercial release in the United States. The supply of pre-release music was often provided by music industry insiders, such as employees of compact disc manufacturing plants, radio stations, and retailers, who typically receive advance copies of music prior to its commercial release.

4. RNS also used several other methods to acquire albums to distribute over the Internet. One method used by the group was to get copyrighted works immediately upon commercial release and "race" to be the first music piracy group to post the album on the Internet. These releases were often called "Tuesday releases" since the music industry traditionally releases new albums on Tuesdays. Many U.S. rippers for RNS bought legitimate new albums on Tuesdays, converted them to digital format, and uploaded them to RNS-affiliated servers prior to any other Internet music piracy group. There was also a handful of "Tuesday Release" rippers in other countries who were able to, for some period of the conspiracy, legitimately purchase albums at times prior to official U.S. release (because the music industry sometimes made the releases in some countries prior to the opening of U.S. retail establishments). These overseas RNS rippers were able to procure the albums in their home countries, rip them to digital format, and upload them to RNS-affiliated servers around the world before the U.S. release.

5. After an RNS member acquired a sound recording that had not yet been illegally distributed on the Internet, the member would create a digital reproduction of the sound recording, "tag" the title of the infringing copy in a way that identified RNS as the source of the infringing copy, and distribute it to secure computer servers throughout the world using File Transfer Protocol

("FTP"). Some of these servers were reserved only for RNS members, while others were accessible to other Internet piracy groups affiliated with RNS. From there, often within a matter of hours, the pirated works were further distributed globally, filtering down to peer-to-peer and other public file sharing networks accessible to anyone with Internet access and potentially appearing for sale around the world.

II.   Defendants

6.   <u>ADIL R. CASSIM</u>. At all times relevant to this indictment, defendant ADIL R. CASSIM, also known by his screen name "Kali," was a resident of California. For some period during the RNS conspiracy, CASSIM was the leader of RNS and made decisions about group operations.

7.   <u>MATTHEW D. CHOW</u>. At all times relevant to this indictment, defendant MATTHEW D. CHOW, also known by his screen name "RL," was a resident of Texas. CHOW was initially contacted in 2000 to help with the graphic design of "info" or ".nfo" file usually included with RNS releases. Later, he became a Tuesday release ripper for the group.

8.   <u>BENNIE L. GLOVER</u>. At all times relevant to this indictment, defendant BENNIE L. GLOVER, also known by the screen name "ADEG," was a resident of North Carolina. GLOVER, along with another RNS member who used the nicknames "St. James" and "Jah Jah," worked for a compact disc production plant in Grover, North Carolina that produced music albums for, among others, Universal Music Group. GLOVER and "St. James" acquired many albums during the course of the conspiracy, including nearly all the major rap (and some pop/rock) pre-release albums, and provided them by various means to CASSIM weeks or often months prior to their commercial release. GLOVER had signed a no-theft policy during his employment at the North Carolina plant.

9. <u>EDWARD L. MOHAN, II.</u> At all times relevant to this indictment, defendant EDWARD L. MOHAN, II, also known by the screen name "MistaEd," was a resident of Maryland. MOHAN, from at least 1999 through 2005, was a Tuesday release ripper for the group.

III. <u>The Conspiracy and its Object</u>

10. From at least 1999 and continuing until approximately January 2007, in the Eastern District of Virginia and elsewhere, members of RNS conspired and agreed to willfully infringe copyrights with others known and unknown to the government; that is, during a 180-day period, defendants herein did conspire and agree with others, including but not limited to a member of RNS, named Patrick L. Saunders, known by the screen name "DALIVEONE," to reproduce and distribute at least ten infringing copies of one or more copyrighted works, with a total retail value of more than $2,500, for purposes of private financial gain, in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Section 2319(b)(1). It was a further object of the conspiracy, from June 2005 to January 2007, to distribute at least one copyrighted work being prepared for commercial distribution by making that work available on a computer network accessible to members of the public, with the knowledge that the work was being prepared for commercial distribution, in violation of Title 17, United States Code, Section 506(a)(1)(C) and Title 18, United States Code, Section 2319(d)(2).

IV. <u>Way, Manner, and Means of the Conspiracy</u>

11. It was part of the conspiracy that the defendant and other members of the Internet music piracy group known as "Rabid Neurosis" would obtain, rip (i.e., convert to computer format), and distribute copyrighted sound recordings, including sound recordings that were being prepared for commercial distribution, to group-affiliated Internet file storage sites (a/k/a "FTP Sites")

throughout the world. Among thousands of copyrighted sound recordings that RNS members reproduced and distributed illegally on the Internet were: "Blue Print 2" by the artist Jay-Z, "Encore" by the artist Eminem, "How to Dismantle an Atomic Bomb," by the group U2, "Thunderbird" by the artist Cassandra Wilson, and "Infinity on High" by the group Fall Out Boy.

12. It was further part of the conspiracy that certain members of the conspiracy would operate and maintain group-controlled computer servers, known as affiliate servers, containing thousands of unauthorized copies of copyrighted works, including software, games, movies, and music, for the reward and benefit of group members and others who supplied infringing sound recordings to the RNS group. These servers were also accessible to members of other Internet piracy groups that were affiliated with RNS. The primary servers housing vast amounts of pirated copyrighted content that were affiliated with RNS were named "B52," "POT," "BNK" and "SPAWN."

### Overt Acts

13. It was further part of the conspiracy that the following act in furtherance of and to effect the objects of the above-described conspiracy was committed in the Eastern District of Virginia and elsewhere:

   a. RNS members, including Patrick L. Saunders, known by the screen name "DALIVEONE," used instant messaging applications, including AOL Instant Messenger ("AIM"), to communicate with one another in furtherance of the conspiracy. When users of AIM initially log into the AIM service, their computers communicate with AOL servers located in the Eastern District of Virginia. On or about November 28, 2006, RNS member DALIVEONE, who

maintained a server containing infringing copies of sound recordings copied and distributed by RNS, communicated with EDWARD MOHAN (also known as MistaED) over AIM concerning obtaining an unauthorized copy of music released by RNS in 2001. In addition, instant messages exchanged via AIM are routed through AOL's computer servers, which are located in the Eastern District of Virginia;

b. In furtherance of the conspiracy, RNS member DALIVEONE communicated using AIM with the site operator of the RNS-affiliated FTP site known as BNK, on or about November 17, 2006. This communication involved the use of computers located in the Eastern District of Virginia;

c. In furtherance of the conspiracy, RNS member DALIVEONE communicated with a member of the music piracy group Apocalypse Production Crew ("aPC"). From 2005 through 2006, these Internet communications were made from DALIVEONE's residence in New York through a computer located in Falls Church, Virginia, which is located in the Eastern District of Virginia;

d. Agents of the Federal Bureau of Investigation ("FBI"), operating from the Northern Virginia Resident Agency of the Washington Field Office within the Eastern District of Virginia, conducted the investigation of RNS and other associated Internet music piracy groups. As part of their investigation, the FBI initiated Internet contacts with computers used by RNS members in furtherance of the conspiracy. These contacts included the downloads of infringing copies of

copyrighted songs into the Eastern District of Virginia from a computer server associated with RNS.

(All in violation of Title 18, United States Code, Section 371).

## FORFEITURE

Pursuant to Rule 32.2(a), the defendants herein are hereby notified that, if convicted of the offense charged in Count One above, they shall forfeit to the United States, pursuant to 18 U.S.C. § 2323(b), any property that was used or intended to be used to commit or facilitate the commission of an offense involving 17 U.S.C. § 506; 18 U.S.C. § 2319, including but not limited to computers and computer media.

A TRUE BILL
Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

_____
Foreperson of the Grand Jury

Dana J. Boente
United States Attorney

_____
Jay V. Prabhu
Assistant United States Attorney

Tyler G. Newby
Trial Attorney
U.S. Department of Justice
Computer Crime & Intellectual Property Section

7